**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RICHARD BOHANNON, | : | Case No. C1-01-463 |
| | : | |
| Petitioner, | : | JUDGE SPEIGAL |
| | : | |
| vs. | : | MAGISTRATE JUDGE HOGAN |
| | : | |
| TIMOTHY BRUNSMAN, Warden, | : | |
| | : | |
| Respondent. | : | |
| | : | |

---

### *RESPONDENT BRUNSMAN'S SUPPLEMENTAL RETURN OF WRIT*

---

## I.    <u>INTRODUCTION</u>

Petitioner Richard Bohannon, #374-617 (hereinafter "Bohannon"), is a state prisoner at the Chillicothe Correctional Institution in Chillicothe, Ohio. Respondent Timothy Brunsman (hereinafter "Respondent") is the Warden at that institution. On July 16, 2001, Bohannon brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. In his petition, Bohannon raised the following grounds for relief:

1.    Newly discovered evidence.

2.    The trial court erred when it allowed hearsay testimony of multiple codefendants.

3.    Ineffective assistance of counsel.

4.    The trial court erred when it allowed the petitioner to be convicted when the evidence was against the manifest weight of the evidence.

In response to Bohannon's petition, Respondent's former counsel filed a return of

writ that took the position that Bohannon's grounds for relief were time-barred, unexhausted, procedurally defaulted and/or meritless.  On March 18, 2004, the Magistrate Judge issued a Report that *inter alia* recommended the staying of this action in order that Bohannon could exhaust his state court remedies with respect to his first ground for relief.  The Court adopted the Magistrate Judge's Report on June 16, 2004.

Bohannon has now finally exhausted his state court remedies.  However, for reasons to follow Respondent respectfully submits that the grounds for relief of Bohannon's petition are both procedurally defaulted and entirely lacking in merit.[1]

## II.    PROCEDURAL HISTORY

### 1.    *State Action – Trial*

Bohannon was indicted by the 1998 Term of the Hamilton County Grand Jury on three (3) counts for the crime of burglary in violation of Ohio Revised Code Section 2911.12, one (1) count for the crime of misuse of a credit card in violation of Ohio Revised Code Section 2913.21, two (2) counts for the crime of aggravated burglary with specifications in violation of Ohio Revised Code Section 2911.11(A)(2), one (1) count for the crime of carrying a concealed weapon in violation of Ohio Revised Code Section 2923.13 (A), one (1) count for the crime of having weapons while under disability in violation of Ohio Revised Code Section 2923.13(A)(2), and one (1) count for the crime of receiving stolen property with specifications in violation of Ohio Revised Code Section 2913.51(A).  (Return of Writ, Exhibit 6).

---

[1] As a convenience to this Court, Respondent has incorporated herein a complete procedural history of this case as well as his full arguments with respect to all of Bohannon's grounds for relief.

Upon arraignment Bohannon entered a plea of not guilty and the case proceeded to trial by jury. Bohannon was found guilty of two counts of burglary, as well as the misuse of credit card and receiving stolen property counts. On May 21, 1999 the trial court sentenced Bohannon to consecutive terms of incarceration of seven (7) years on each of the burglary convictions, and seventeen (17) months on the misuse of a credit card conviction. The trial court additionally sentenced Bohannon to a concurrent six (6) month term of incarceration on the receiving stolen property conviction. (Return of Writ, Exhibit 1, Case No. B-9809141-A).

### 2.    Direct Appeal

On September 23 1999, Bohannon appealed to the First District Court of Appeals where he raised the following assignments of error:

1. The trial court erred to the prejudice of the defendant-appellant in that it convicted him largely due to the admission of hearsay testimony of multiple codefendants.

2. The trial court erred to the prejudice of the defendant-appellant in that it allowed appellant to be represented ineffectively by trial counsel.

3. The trial court erred to the prejudice of the defendant-appellant in that it convicted him based upon insufficient evidence, and in that it convicted him against the manifest weight of the evidence.

4. A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender.

(Return of Writ, Exhibit 5). On March 1, 2000, the Court of Appeals issued an opinion affirming the trial court's judgment. (Return of Writ, Exhibit 2, Case No. C-990386).

Bohannon did **not** timely appeal the denial of his direct appeal to the Ohio Supreme Court.

Three months subsequent to the denial of his direct appeal, on June 1, 2000, Bohannon filed a motion for delayed appeal in the Ohio Supreme Court. (Exhibit A). On July 12, 2000, the Ohio Supreme Court denied Bohannon leave to file a delayed appeal and dismissed the appeal. (Return of Writ, Exhibit 4, Case No. 00-998).

### 3.    Federal Action

On July 16, 2001, Bohannon filed an application for writ of habeas corpus pursuant to 28 U.S.C. Section 2254 in this Court that raised the following grounds for relief:

1.    Newly discovered evidence.

2.    The trial court erred when it allowed hearsay testimony of multiple codefendants.

3.    Ineffective assistance of counsel.

4.    The trial court erred when it allowed the petitioner to be convicted when the evidence was against the manifest weight of the evidence.

As noted above, subsequent to Respondent's filing of a return of writ, this Court stayed this action in order to allow Bohannon an opportunity to attempt an exhaustion of his so-called "suppressed evidence" claim.

### 4.    Post-Conviction Petition

On April 5, 2004, Bohannon filed a post-conviction petition in the Hamilton County Court of Common Pleas that accused the prosecutor of withholding "exculpatory evidence" in the form of a co-defendant taped confession. (Exhibit B). The State filed a response (Exhibit C), to which Bohannon replied. (Exhibit D). On June 10, 2004, the Common Pleas court issued findings of fact and conclusions of law that denied Bohannon's petition on *res judicata* grounds. (Exhibit E, Case No. B9808141).

4

Bohannon appealed to the First District Court of Appeals where he complained that the trial court erred by denying his post-conviction petition without conducting an evidentiary hearing.  (Exhibit F).  The State filed a response.  (Exhibit G).  On March 23, 2005, the Court of Appeals affirmed the judgment of the trial court.  (Exhibit H, Case No. C-040415).  In so ruling the appellate court explicated found that Bohannon's post-conviction petition had been untimely filed.[2]

Bohannon appealed to the Ohio Supreme Court where he filed a memorandum in support of jurisdiction that offered no explanation whatsoever for the untimeliness of his post-conviction pursuits.  (Exhibit K).  On August 10, 2005, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Exhibit L, Case No. 05-0765).

### 5.    "Motion to Appeal Sentence"

Although in its March 18, 2004 Report this Court ordered Bohannon to file a motion to reinstate his habeas petition within thirty days of the exhaustion of his post-conviction petition, Bohannon instead chose to additionally litigate a "motion to appeal sentence" during and after the period that his post-conviction petition was pending in the Ohio courts.  (Exhibit M).  The State filed a motion in opposition.  (Exhibit N).  On August 25, 2005, the Court of Appeals overruled Bohannon's motion to appeal.  (Exhibit O, Case No. C-050589).

On October 7, 2005, Bohannon filed an appeal with memorandum in support of jurisdiction in the Ohio Supreme Court.  (Exhibit P).  On January 25, 2006, the Ohio

---

[2] A subsequently filed Bohannon reconsideration motion, (Exhibit I), was denied on April 29, 2005. (Exhibit J).

Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Exhibit Q, Case No. 05-1899).

Finally, on February 16, 2006, Bohannon filed a moved this Court to reinstate this action.  On March 1, 2006, this Court granted Bohannon's motion and further ordered Respondent to discuss the status of this action.

III.    **AEDPA - STANDARD OF REVIEW**

    *1.    Introduction*

On April 24, 1996, President Clinton signed Section 101 of the Antiterrorism and Effective Death Penalty Act of 1996, codified as amended at 28 U.S.C. §2244 (d) (hereinafter AEDPA) into law.   AEDPA made significant changes in habeas law including a one-year statute of limitations, restrictions on issues that can be appealed, vastly heightened respect for state court factual and legal determinations, and restrictions on the ability to file successive petitions and timetables for federal courts to act on capital habeas actions when certain prerequisites have been met.

    *2.    Claims Adjudicated on the Merits in State Court*

Under 28 U.S.C. Section 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Terry Williams v. Taylor*, 529 U.S. 362 (2000) the United States Supreme Court provided guidance on the meaning of the habeas standard of review. Specifically the Court held that a writ may not issue unless:

> the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*See also, Yarborough v. Gentry,* 540 U.S. 1 (2003); *Price v. Vincent*, 538 U.S. 634 (2003).

The Sixth Circuit Court of Appeals has similarly recognized that under AEDPA standards a federal habeas petitioner is required to show that the state courts:

> either failed to apply clearly established federal law to [petitioner's] claims, issued a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings", or denied [petitioner's] claims even though the facts of [petitioner's] case were "materially indistinguishable" from a case in which the Supreme Court granted relief.

*Roberts v. Carter,* 337 F.3d 609 (6th Cir. 2003), *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied,* 532 U.S. 989 (2001).

### 3.    *Presumption of Correctness*

28 U.S.C. Section 2254 (e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Pursuant to the required deference, a writ of habeas corpus should not be granted unless "the state court decision [is] so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers v. Killinger*, 169 F.3d 352, 361-62 (6th Cir.), *cert. denied*, 527 U.S. 1004, (1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998)).

Federal courts must therefore defer to state court factual findings, affording a presumption of correctness that a habeas petitioner may rebut only with clear and convincing evidence. *See,* 28 U.S.C. Section 2254(e)(1). "The presumption * * * applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996).

### 4.   Evidentiary Hearing

Under 28 U.S.C. Section 2254:

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows –

(A) the claim relies on –

(I)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(II)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the

constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the United States Supreme Court addressed Section 2254(e)(2). The Court held that AEDPA prohibited a federal district court from holding an evidentiary hearing to consider factual issues to situations unless it could be established that the claim relied upon either a new retroactive rule of constitutional law or a factual basis that could not have been discovered by due diligence, **and** that the facts underlying the claim could establish by clear and convincing evidence that but for the error, no reasonable factfinder would have found the petitioner guilty. *Williams* at 433.

### 5. *Statute of limitations*

The AEDPA one-year statute of limitations set forth in 28 U.S.C. §2244 states, in relevant part, as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

The United States Supreme Court has held that direct review is generally viewed as including the ninety-day period for seeking *certiorari*. *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989). Thus, cases will become final on direct review for purposes of §2244(d)(1)(A) when *certiorari* is denied or time to file a *certiorari* petition expires. Additionally, the running of the limitations period is tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims. 28 U.S.C. §2244(d)(2).

9

In Respondent's previously filed return of writ it was argued that Bohannon's petition was barred by the AEDPA statute of limitations. However, as correctly observed by the Magistrate Judge in its March 18, 2004 Report, in the subsequently issued case of *Abela v. Martin,* 348 F.3d 164 (6th Cir. 2003), the Sixth Circuit held that even for delayed appeals and collateral actions, AEDPA tolling continues for the ninety-day period during which time a *certiorari* petition could be filed in the United States Supreme Court. Applying the dictates of *Abela* to the case at bar, Respondent believes that Bohannon's habeas corpus petition is not time-barred.

## IV.    PROCEDURAL DEFAULT

### 1.    *Introduction*

A petitioner is generally procedurally barred from litigating claims not fairly presented to the state courts, unless he can demonstrate cause to excuse his failure to present the claims in the state courts and actual prejudice resulting from the failure. *See*, *Coleman v. Thompson*, 501 U.S. 722, 723 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 89-90 (1977). In the Sixth Circuit, procedural default is generally analyzed under the four-part test articulated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The test asks: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review; and (4) whether the petitioner can demonstrate cause for, and actual prejudice resulting from, the procedural default.

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his

conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *See Coleman v. Thompson*, *supra* at 750. As the Sixth Circuit observed in *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003),

> [A] petitioner claiming actual innocence must support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Further, to establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Actual innocence, moreover, means factual innocence, not mere legal insufficiency.

*Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995) and *Bousley v. U.S.*, 523 U.S. 614, 623-24 (1998) (citation omitted).

### 2. *Bohannon waived the right to bring his first ground for relief in federal habeas corpus by failing to pursue a timely post-conviction petition.*

As his first ground for relief Bohannon raises a "suppression of the evidence" claim that was **not** fairly presented to the Ohio courts. In its denial of Bohannon's post-conviction appeal, the Court of Appeals explicitly relied upon this procedural default as it identified Bohannon's failure to file a timely post-conviction petition as the basis for its decision at Exhibit H, p. 2, emphasis added:

> **Bohannon failed to file his petition within the time prescribed by R.C. 2953.21(A)(2)**. R.C. 2953.23 closely circumscribes the jurisdiction of a common pleas court to entertain a tardy postconviction petition: The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his petition depends, or that his claim is predicated upon a new and retrospectively applicable federal or state right recognized by the United States Supreme Court since the prescribed time had expired; and he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *."

11

> Bohannon did not base his postconviction claim upon a new constitutional right. **And he failed to submit with his petition evidence demonstrating that he had been unavoidably prevented from discovering the facts upon which his claim depended.** R.C. 2953.23(A) thus precluded the common pleas court from entertaining the petition.

As thus demonstrated, the first and second factors in the *Maupin* test have been fully satisfied. Specifically, as a consequence of Bohannon's failure to timely litigate his post-conviction petition, Bohannon deprived the Ohio appellate courts of a fair opportunity to consider his "suppressed evidence" claim.

The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Since Bohannon failed to present his first ground for relief to the Ohio appellate courts in a timely fashion, he is required to demonstrate both cause and prejudice. However, to date, Bohannon has not even attempted to establish cause or prejudice for the procedural default of his "suppressed evidence" claim. The *Maupin* criteria has been entirely satisfied as to Bohannon's first ground for relief.

**3.    *Bohannon waived the right to bring his second, third, and fourth grounds for relief in federal habeas corpus by failing to pursue a timely Ohio Supreme Court appeal.***

The Sixth Circuit Court of Appeals has explicitly held that when a petitioner fails to file a timely appeal in the Ohio Supreme Court, and the Ohio Supreme Court subsequently denies said motion for a delayed appeal, that the petitioner has procedurally defaulted his claims. In a case procedurally indistinguishable from the

case at bar, the Sixth Circuit held in *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.), *cert. denied*, 125 S.Ct. 506 (2004).

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup. Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup. Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits. Indeed, this court has previously reached this conclusion, albeit in unpublished opinions. *See Hall v. Huffman*, No. 98-3586, 2000 WL 1562821, at *3 (6th Cir. Oct. 11, 2000) (unpublished); *Shabazz v. Ohio*, No. 97-3085, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (unpublished).

Applying the dictates of *Bonilla*, it is clear that Bohannon has waived the right to bring his second through fourth grounds for relief in federal habeas corpus. This is so because, like Bonilla, Bohannon "failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the provisions of Ohio Sup. Ct. R. II, Section 2(A)(4)." *Id.* at 497.

Here, Bohannon submitted a patently bogus delayed appeal motion to the Ohio Supreme Court wherein he senselessly argued that his *pro se* status somehow excused his procedural default. Bohannon additionally submitted an affidavit dated April 20, 2000 in which he openly acknowledged that he failed to appeal to the proper court.

Incredibly, the April 20, 2000 affidavit was attached to a certificate of service dated April 11, 2000, or over a week **prior** to the date that the affidavit was allegedly created.  Even more suspicious is the fact that the motion was not filed in the Ohio Supreme Court until May 20, 2000, or over six weeks **after** Bohannan discovered that he had failed to appeal to the proper court.  (See, Exhibit A).   Under these circumstances, the Sixth Circuit's observation in *Bonilla* at 370 F.3d 494, 498 is directly applicable:

> None of Bonilla's arguments establish cause to excuse his procedural default. First, Bonilla's pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. *See Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995). Second, Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default.

Bohannon's second, third and fourth grounds for relief are thus barred from federal habeas corpus review under the doctrine of procedural default.  **This default was the consequence the inexcusable inaction of Bohannon for which no credible explanation was offered.**   Bohannon's petition must be dismissed with prejudice.

## V.    MERITS

   **1.    As the State fully complied with the dictates of <u>Brady v. Maryland</u>, there is not a reasonable probability of a different trial result based upon Bohannon's "newly discovered evidence" claim.**

As his first ground for relief, Bohannon complains that the State failed to disclose his accomplice's taped statements, which Bohannon then brands as "exculpatory evidence."  In *Brady v. Maryland,* 373 U.S. 83 (1963), the Court articulated the now well established principle that "suppression by the prosecution of evidence favorable to an

accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith of the prosecution." *Brady* at 87.  *See also, United States v. Bagley,* 473 U.S. 667 (1985).  To prevail on a *Brady* claim, Bohannon must show that the evidence was favorable to the defense, was suppressed by the prosecution, and was material to the case.  *See, Kyles v. Whitley,* 514 U.S. 419 (1995).

In *Strickler v. Green*, 527 U.S. 263 (1999), the Court reemphasized that *Brady* and its progeny established a duty on the part of the prosecution to disclose material evidence whether or not requested by the defense.  Further, the Court recognized that such evidence includes both exculpatory and impeachment evidence.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Thus evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Each prosecutor has an affirmative duty to disclose any favorable evidence that may by known by anyone working on the case for the government, including police and investigators. *Id.* at 437.

As set forth by the Court, there are three components of a *Brady* violation:

1.    the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

2.    the evidence must have been suppressed by the State, either willfully or inadvertently; and

3.    prejudice must have ensued.

In order to obtain relief for a *Brady* violation, Bohannon must satisfy **all** three requirements.

Here, Bohannon fails to satisfy **any** of the prongs set forth in *Kyles*.  Initially, not only does Bohannon fail to demonstrate how the alleged tape may be exculpatory, but the only statements made by the accomplices known to the State were the object of suppression motions, initiated by the defense.

Bohannon fails the second prong as well.  If the taped statements referred to are the same as were subject to suppression motions at trial, then those tapes were actually admitted over Bohannon's objections.

Finally, Bohannon cannot establish prejudice resulting from the non-disclosure of the alleged evidence.  Bohannon has only made a bare conclusory assertion that the evidence would exonerate him.  Additionally, the weight of the evidence against Bohannon adduced at trial was overwhelming. This evidence included but was not limited to, eyewitness testimony, vehicle and vehicle license plate identification by witnesses, a gun recovered from an accomplice, as well as stolen items and credit card records.

Bohannon, has thus failed all three prongs of the *Brady* test.  Even if not waived, Bohannon's first ground for a writ is not actionable in federal habeas corpus.

### 2. Any trial court error with respect to the admission of the statements of Bohannon's accomplice was harmless.

The Court of Appeals analysis of Bohannon's claim regarding the admission of his accomplice's statements was predicated upon a harmless error analysis that was in full accord with United States Supreme Court precedent.  "Under the harmless error doctrine, courts deem an error harmless unless it 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  An error is harmless unless it either has a substantial or injurious effect in

determining the jury's verdict, or it places the court in grave doubt about the effect of the error. *O'Neal v. McAninch*, 513 U.S. 432 (1995).

To determine whether the trial court's error was harmless, a number of factors must be examined, including: (1) "the importance of the witness's testimony in the prosecution's case;" (2) "whether the testimony is cumulative;" (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;" (4) "the extent of cross-examination otherwise permitted;" and (5) "the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Here, the Hamilton County Court of Appeals reasonably recognized that the prosecution produced an overwhelming amount of evidence of Bohannon's guilt, independent of the statements in question. This evidence included but was not limited to, eyewitness testimony, vehicle license plate identification by witnesses, as well as descriptions of the vehicle seen during the commission of the crimes, a gun recovered from an accomplice as well as stolen items and credit card records. As the Hamilton County Court of Appeals reasonably determined at Return of Writ, Exhibit 2, p. 4:

> …[W]e hold – based upon the overwhelming evidence of guilt aside from the erroneously admitted statement, including Bohannon's incriminating statement made to the arresting officer – that the admission of the nontestifying accomplice's statement was harmless.

For the aforementioned reasons, the admission of the evidence in question did not have a substantial or injurious effect on this case. The mountain of evidence independent of the statement of Bohannon's accomplice, established Bohannon's guilt beyond **any** doubt. Even if not procedurally defaulted, Bohannon's second ground for a relief is void of merit.

### 3. *Bohannon was not denied the effective assistance of counsel.*

As his third ground for relief, Bohannon complains that counsel was ineffective for not securing witnesses **whom Bohannon deems unworthy of identification.** The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

Thus, in order to show that counsel's performance was deficient, Bohannon must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential; indeed, the court must presume that the challenged action might be considered sound trial strategy. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "It is all too tempting for a defendant to second-guess

18

counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

As his third ground for relief, Bohannon argues that defense counsel should have called a witness or witnesses to testify that State witnesses were being untruthful. Bohannon, however, does not name any witness whom his lawyer was supposed to contact, nor does he explain in what ways the State's witnesses were allegedly being untruthful.  Aside from the obvious possibility that no witnesses existed to honestly testify for Bohannon as he desired, trial counsel was still free to question the State's witnesses to explore their veracity.  As such, counsel's strategy cannot be credibly impugned by Bohannon's bare assertions.

Respondent finally notes in passing that it is possible that Bohannon is referring to two witnesses that he referred to at trial, who purportedly would have testified that Bohannon's accomplices knew each other.  However, the State stipulated to the testimony of Bohannon's proposed witnesses, and the trial proceeded without further objection by Bohannon or his attorney.  Return of Writ, Exhibit, 2, p. 2.  Under these circumstances, even if not waived Bohannon has failed to set forth a Sixth Amendment deprivation of constitutional dimensions.

### 4. Manifest weight of the evidence claims are not actionable in federal habeas corpus.

As his fourth ground for relief, Bohannon contends that his conviction was against the manifest weight of the evidence.  However, manifest weight of the evidence claims are not appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest

weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969. However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, Bohannon's claim that his conviction was against the manifest weight of the evidence cannot be considered by this Court.

Assuming *arguendo* that Bohannon's waived manifest weight of the evidence claim had been instead asserted as a insufficiency of the evidence claim, it would still lack merit. In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added), the

United States Supreme Court stated that a federal tribunal on habeas corpus reviewing the sufficiency of the evidence must make the following inquiry:

> Whether, **after viewing the evidence in light most favorable to the prosecution**, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In *Jackson* the Court further made it clear that this test does not require that the federal habeas corpus court sit as a trier of fact.  Instead, the federal district court should give every weight to the jury's ability to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basis facts to ultimate facts.

Here, as reasonably determined by the Court of Appeals at Return of Writ, Exhibit 2, p. 4, **overwhelming** evidence of guilty was adduced at trial:

> The record in this case demonstrates that Bohannon, by his own admission, was the driver of a vehicle that carried two other individuals, one of whom burglarized two locations.  Evidence was presented that tied Bohannon's car to one of the burglaries via his license-plat\e number.  Additionally, witnesses testified that they recognized Bohannon's coat, which had been worn by the accomplice who committed the burglary.  Thus, based upon complicitor liability, Bohannon was guilty of burglary.  As to the offense of misuse of a credit card, Bohannon's license-p[late number was tied to the purchase of gas and other merchandise.  Finally, the police recovered stolen watches from Bohannon's car.  Testimony was presented that the watches belonged to one of the victims.  Thus, the charge of receiving stolen property was properly supported by the evidence.  Based upon the overwhelming evidence of guilt – aside from the erroneously admitted statement of the nontestifying accomplice – we hold both that there was substantial evidence to satisfy the elements of the charged offenses, and that the evidence was sufficiently probative of guilt beyond a reasonable doubt.

In light of the above, the Court of Appeals rejection of Bohannon's "manifest weight of the evidence" claim was in full accord with the standards set forth by the Court in *Jackson. See also, Walker v. Russell,* 57 F.3d 472 (6th Cir.) *cert. denied*, 516 U.S. 975

(1995). Even if not waived, Bohannon's fourth ground for relief is not actionable in federal habeas corpus.

## VI.    **CONCLUSION**

Based upon the aforementioned reasons stated within this Response, Bohannon's motion for leave to reinstate must be dismissed. No certificate of appealability should issue. The docket sheets from Bohannon's state court proceedings are attached hereto as Exhibit R.

Respectfully submitted,

JIM PETRO (0022096)
Attorney General

/s/Stuart A. Cole
STUART A. COLE (0020237)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233
(614) 728-9327 (Fax)
scole@ag.state.oh.us

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of Respondent Timothy Brunsman's Supplemental Return of Writ was sent to Petitioner, Richard Bohannon, #374-617, Chillicothe Correctional Institution, P.O. Box 5500, Chillicother, Ohio 45601 via regular U.S. mail on this 14th day of March, 2006.


/s/Stuart A. Cole
STUART A. COLE
Assistant Attorney General

**INDEX**

**ITEM**                                                                      **EXHIBIT**

Delayed Appeal Motion
  Ohio Supreme Court
  Case No. 00-998 ........................................................................................A

Post-Conviction Petition
  Hamilton County Common Pleas Court
  Case No. B-9808141-A .................................................................................B

Memorandum in Opposition
  Hamilton County Common Pleas Court
  Case No. B-9808141-A .................................................................................C

Bohannon's Reply
  Hamilton County Common Pleas Court
  Case No. B-9808141-A .................................................................................D

Findings of Fact and Conclusions of Law, Entry Denying Post-Conviction Petition
  Hamilton County Common Pleas Court
  Case No. B-9808141-A .................................................................................E

Bohannon's Brief
  Court of Appeals, First Appellate District
  Case No. C-040415 ......................................................................................F

Brief of State of Ohio
  Court of Appeals, First Appellate District
  Case No. C-040415 ......................................................................................G

Judgment Entry
  Court of Appeals, First Appellate District
  Case No. C-040415 ......................................................................................H

Motion to Reconsider
  Court of Appeals, First Appellate District
  Case No. C-040415 ......................................................................................I

Journal Entry
  Court of Appeals, First Appellate District
  Case No. C-040415 ......................................................................................J

# INDEX – cont.

**ITEM**                                                                                          **EXHIBIT**

Memorandum in Support of Jurisdiction
    Ohio Supreme Court
    Case No.  05-0765 ......................................................................................K

Entry
    Ohio Supreme Court
    Case No.  05-0765 ......................................................................................L

Motion for Leave to Appeal Sentence
    Court of Appeals, First Appellate District
    Case No. C-050589 ....................................................................................M

Motion in Opposition
    Court of Appeals, First Appellate District
    Case No. C-050589....................................................................................N

Judgment Entry
    Court of Appeals, First Appellate District
    Case No. C-050589 ....................................................................................O

Memorandum in Support of Jurisdiction
    Ohio Supreme Court
    Case No. 05-1899 .....................................................................................P

Entry
    Ohio Supreme Court
    Case No. 05-1899 ....................................................................................Q

Dockets Sheets ..................................................................................................R