ORIGINAL
ON COMPUTER - CMM

IN THE SUPREME COURT OF OHIO

Richard Bohannon,                    :        03-0765

    Appellant,                    :
                                              On Appeal from the
                                     :        Hamilton County Court
                                              of Appeals, First
v.                                   :        Appellate District

                                     :
State of Ohio,                       :        Court of Appeals
                                              Case No. C-040415, C-990386
    Appellees.                    :

**************************************************************

## MEMORANDUM IN SUPPORT OF JURISDICTION
## OF APPELLANT RICHARD BOHANNON

**************************************************************

Herbert E. Freeman (0005364) (COUNSEL OF RECORD)
620 American Building
30 East Central Parkway
Cincinnati, Ohio 45202-8153
(513) 381-8115
Fax No. (513) 381-8153

COUNSEL FOR APPELLANT, RICHARD BOHANNON; PRO SE

Thomas J. Boychan, Jr. (0040183P) (COUNSEL OF RECORD)
Hamilton County Assistant Prosecutor
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202-2138
(513) 946-3210
Fax No. (513) 946-3158

COUNSEL FOR APPELLEES, STATE OF OHIO

FILED

APR 29 2005

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

K

## TABLE OF CONTENTS

Page

EXPLANATION OF WHY THIS CASE IS A
CASE OF PUBLIC OR GREAT GENERAL
INTEREST AND INVOLVES A SUBSTAN-
TIAL CONSTITUTIONAL QUESTION...........................  1

STATEMENT OF THE CASE AND FACTS........................  6

ARGUMENT IN SUPPORT OF PROPOSIT-
IONS OF LAW...........................................  7

    **Proposition of Law No. I:** Trial court
    erred admitting co-defendant's taped
    statement and a state's witness's
    trial deposition and testimonial
    evidence which Appellant had no
    opportunity for cross-examination,
    in violation of Defendant's right to
    due process of law, to confront
    witnesses against him, which rights
    are secured to him by the United
    States Constitution and the Ohio
    Constitution...........................................  7

CONCLUSION............................................  14

PROOF OF SERVICE......................................  15

APPENDIX

    Judgment Entry of the Hamilton County
    Court of Appeals (March 23, 2005)...................  1

    Judgment Entry of the Hamilton County
    Court of Appeals (March 1, 2000)...................  3

    Judgment Entry of the Hamilton County
    Court of Appeals (January 21, 2005)...............  6

    Judgment Entry of the Hamilton County
    Court of Appeals (November 24, 2004)...............  7

    Judgment Entry of the Hamilton
    Court of Common Pleas (June 10, 2004)...............  8

    Ohio v. Killings 1998 WL 272959 (Ohio App. 1 Dist.).  10
    Ohio v. Crooks 1984 WL 7110 (Ohio App. 1 Dist.).....  11

(i)

## EXPLANATION OF WHY THIS CASE IS A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND INVOLVES A SUBSTANTIAL CONSTITUTIONAL QUESTION

This case presents critical issues concerning the perception of the public as to the fairness and integrity of judicial proceedings in Ohio courts:

1. Constitutional guarantee of equal protection under the laws of the United States of America.

2. A defendant's right to due process of the law, to confront accusing witnesses against him, which rights are secured by the Sixth Amendment of the United States Constitution, and Article I Bill of Rights, § 10 of the Ohio Constitution.

The United States Supreme Court's most recent decision concerning testimonial "hearsay", decided on March 8, 2004, abrogating Ohio v. Roberts, 48 U.S. 50, 100 S.Ct. 2531, 65 L.Ed. 2d 597; reaffirms that the admissability of evidence against the accused depends on a prior opportunity for cross-examination; rejecting the view once held that the Confrontation Clause applies of its own force only to in-court testimony and that its application to out-of-court statements introduced at trial depend upon law of evidence. See Crawford v. Washington, U.S. S.Ct. 1354, 158 L.Ed. 2d.

In respect to the court of appeals decision in this case, the decision below is contrary to clearly established federal law. See Arizona v. Fulminante, 449 U.S. 279, 111 S.Ct. 1246, 113 L.Ed. 2d 302 (1991).

On collateral review, it is well-established law that an error is deemed harmless "unless" it had a substantial and injurious effect or influence in determining the jury's verdict. See O'Neil v. McAninch, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed. 2d 947 (1994).

(1)

In this case, the Court of Appeals held that Defendant-Appellant's "Confrontation Clause rights were violated because pursuant to Lilly v. Virginia (1994), 527 U.S. 116, 119 S.Ct. 1887, a non-testifying accomplice's statement that tends to shift blame to others is inherently unreliable and does not bear adequate indicia of reliability." But, that despite this, "we hold - based upon the overwhelming evidence of guilt aside from the erroneously admitted statement, including Bohannon's incriminating statement made to the arresting officer - that the admission of the non-testifying accomplice's statement was harmless."

The Court of Appeals misinterprets transcript resulting in a decision that is erroneous and contrary to the record in this instance. Reviewing the record, it impugns the Court's holding and shines new light upon the adjudication below. The prosecutor insisted that the Defendant-Appellant voluntarily gave a statement to a police officer (Middendorf) after being read his Miranda warnings, which placed him behind the wheel of the automobile which transported the co-defendant's to the crime scene. Officer Middendorf also testified, "he(Bohannon) stated he was just a gypsy cab driver, and that they(Johnson & Salahuddin)were going to pay him $200.00 to take them up to Delhi." However, re-direct examination revealed that Officer Middendorf had testified inaccurately. When further questioned, he made correction to the misstatement stating that, "it is not Bohannon's statement, Abdullah's statement is the $200.00 statement, you're correct." (T.p. 274) The Court of Appeals has only made bare assertions that the evidence is overwhelming evidence of Defendant-Appellant's guilt.

(2)

Aside from the incorrect misconception condemning Defendant-Appellant as having made incriminating statements, by the Court's reasoning, the non-testifying accomplice's statement is deemed harmless, though the incompetent assertion is the only evidence which links Defendant-Appellant to the crime.

The Court of Appeals erroneously reasons, "the police recovered stolen watches from Bohannon's car", when in fact the testimony revealed, "the watches were removed from a co-defendant (Charles Johnson) by Officer Roberts as Johnson steps out of the restaurant." (T.p. 263) Further, though Defendant-Appellant's license plate number was tied to the purchase of gasoline, no evidence adduced linking Defendant-Appellant, himself, identifying him during these purchases. In fact, testimony was presented that exonerates him. (A co-defendant admitting to possessing the card and to purchasing gasoline.)

In the instant case, the conviction is solely based on the inference and presumption of guilt - a self-contained demonstration of inconsistent and unpredictable application of evidence rule and reveals judicial failure to interpret the Constitution in a way that secures its intended constraint on judicial discretion.

It is unpardonable (unconstitutional) to admit core testimonial statements and unsworn testimony that the Confrontation Clause plainly meant to exclude. See Stapleton v. Wolfe, 288 F.3d 863 (6th Dist.)

In this instant case, defense counsel objected to, first, the taking of deposition and objected to the introduction of the document. (T.p. 292) Defense counsel then made this objection to the trial

(3)

deposition for the reason, "Mr. Bohannon has a right to confront his accuser." (T.p. 292) Defense counsel objected to the playing of co-defendant's taped statement for two reasons aside. The first, "that would not give Mr. Bohannon the opportunity to cross-examine the person." (T.p. 301) Second, "the tape may identify Mr. Bohannon's name, and again, he loses the opportunity to cross-examine Mr. Salahuddin on the statement." (T.p. 301)

State law, notwithstanding, admitting the evidence would violate Defendant's federal constitutional right to be "confronted" with the witnesses against him.

Defendant-Appellant challenges the Court of Appeals conclusion of harmless error. Defendant-Appellant argues that both state court's adjudication "resulted in a decision that was contrary to, and involves an unreasonable application of clearly established Federal law", as determined by the Supreme Court of the United States, 28 U.S.C.A. § 2254(d)(1) (West), and that each of the below court's conclusions stray from the original meaning solicited for the protection of individual rights of the Confrontation Clause, and is in urgent need of correction.

Clearly, absent the adduced "incompetent" testimony in this instance, the record fails to support the contention of overwhelming evidence of guilt. No adduced evidence exists which is damning against Defendant-Appellant on the record. The question then becomes whether the incompetent testimony and testimonial statements were cumulative and therefore pivotal factors in this Court's analysis of Defendant-Appellant's claim. It should treat the error(s), not as if harmless,

(4)

but as if it affected the verdict; "i.e., as if it had a
substantial and injurious effect or influence in determining the
jury's verdict." O'Neil v. McAninch, supra. See Delaware v. Van
Arsdall, 475 U.S. 678, 684, 106 S.Ct. 1431, 89 L.Ed. 2d 674
(1986); Arizona v. Fulminante, supra; Calvert v. Wilson 288
F.3d 823; Ohio v. Killings 1998 WL 272959 Ohio App. 1 Dist.;
Ohio v. Crooks 1984 WL 7110 Ohio App. 1 Dist.

There are three additional reasons Defendant-Appellant's case
is of public or great general interest and these reasons involve
substantial constitutional questions.

First, the trial court forced Defendant-Appellant to commence
trial when Defendant-Appellant and his attorney were inadequately
and, thus, unprepared for trial.  In addition, the trial court
allowed the State to amend Defendant-Appellant's charges at trial
to aiding and abetting which Defendandt-Appellant and his attorney
were not prepared to defend.  (T.pp. 108-131)

Second, the trial court barred, disallowed and, thus, denied
Defendant-Appellant to subpoena witnesses to testify on his behalf
behalf. (T.pp. 124-131)

Third, the trial court prevented and impeded Defendant-
Appellant to obtain fruits of discovery and, thus, hindered
efforts to prepare and construct a defense at trial (T.pp. 364-
365).

(5)

## STATEMENT OF THE CASE AND FACTS

In the above-captioned case, the Defendant was found guilty of two counts of BURGLARY, one count of MISUSE OF A CREDIT CARD, and one count of RECIEVING STOLEN PROPERTY. On May 21, 1999, Defendant was sentenced to consecutive terms of seven (7) years incarceration for the burglary convictions, and concurrent terms of seventeen (17) months incarceration for misuse of a credit card and recieving stolen property. Defendant's convictions were upheld by the Court of Appeals, First Appellate District on March 1, 2000.

Defendant filed a delayed appeal with the Ohio Supreme Court on June 1, 2000. On June 12, 2000, the delayed appeal was denied and dismissed.

On July 16, 2001, Defendant filed an Application For A Writ Of Habeas Corpus with the Federal U.S. District Court, Southern District Court of Ohio, Western Division, on March 18, 2004, and a Report and Recommendation ensued. That court held that Defendant had not exhausted available state court remedies, and stayed the case pending Defendant's exhaustion of state remedies in accordance with the conditions set in its recommendation.

"If the trial court denies the post-conviction petition either on merits of petitioner's claim or based on petitioner's failure to meet the standards set forth in Ohio Revised Code § 2953.23, petitioner may appeal that ruling to the Court of Appeals pursuant to Ohio R. App. P. 4(A) and, if necessary, ultimately to the Ohio Supreme Court pursuant to Rule II, Section 2(A)(1), Rules of Practice of the Supreme Court of Ohio."

On April 5, 2004 Defendant filed a Petition To Vacate Or Set Aside Judgment Of Conviction Or Sentence to the Court of Common Pleas. On July

29, 2004, Defendant's petition was denied.

On October 19, 2004, Defendant filed an appeal with the Court of Appeals, and on March 23, 2005, the court affirmed the judgment of the Common Pleas Court, and denied petitioner's appeal.

This appeal with the Ohio Supreme Court, asking that Defendant-Appellant be granted jurisdiction and allow this cause to be heard ensued.

In support of its position on these issues, the Appellant presents the following argument.

## ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW

Propositions of Law No. 1: Trial court erred admitting co-defendant's taped statement and a state's witness's trial deposition and testimonial evidence which appellant had no opportunity for cross-examination, in violation of defendant's right to due process of law, to confront witnesses against him, which rights aresecured to him by the United States Constitution and the Ohio Constitution.

When trial court admitted statements which Appellant had no opportunity for cross-examination, the Appellant's constitutional rights to confront witnesses is thwarted, in violation of the Confrontation Clause, thus denying him of due process and of equal protection of the laws.

In the above-captioned case, trial court violated defendant's substantial rights over defense counsel's objections when it allowed taped testimonial statements and a trial deposition of a witness into evidence against Defendant's Sixth Amendment Confrontation rights, when he had no prior opportunity for cross-examination. This violation, and ensuing prejudice, denied Defendant-appellant of a fundamentally fair trial.

(7)

Criminal Law 662.8 states specifically the confrontation clause provides that the accused has the right to confront and cross-examine witnesses against him and it applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of admissibility of statements under law of evidence (U.S.C.A. Const. Amend. 6).

A defendant's right to confront and cross-examine witnesses against under the confrontation clause applies to those who bear testimony against him which is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact. Only indicium of reliability sufficient to satisfy constitutional demands is the one the the U.S. Constitution actually prescribes, i.e. confrontation U.S.C.A. Const. Amend. 6.

Where testimonial statements are involved, the framers did not mean to leave the Sixth Amendment protection to vagaries of Rules of Evidence, muchless to amorphous notions of reliability.

Admittance of statements deemed reliable by any means other than face to face adversarial cross-examination is fundamentally at odds with the right to confrontation.

The clause ensures not only reliability of evidence, but how reliability can be determined, thus testimonial statements can not be assumed reliable uncontested by the adversarial process.

Where testimonial evidence is at issue, Sixth Amendment demands what common law requires, unavailability and prior opportunity to cross-examine witnesses including at a minimum, testimony at preliminary hearing, before grand jury or at a former trial and statements elicited during law enforcement interrogations. (Crim. Law 662.8, 662.9, 662.60,

(8)

U.S.C.A. Const. Amend. 6) Out-of-court statements that qualify as testimonial, and thus, they are not admissible under the Confrontation Clause.

The framers would not have allowed admission of testimonial statements of witnesses who did not appear at trial unless they were unavailable to testify, and the defendant had had prior opportunity for cross-examination.

The ultimate goal of the Confrontation Claus is to ensure reliability of evidence in that it commands, not that evidence be reliable, but that reliability be assessed in a particular manner; i.e., by testing in crucible of cross-examination. (Crim. Law 662.1, 662.7, U.S.C.A. Const. Amend. 6)

Extra-judicial statements, such as depositions, are testimonial and notwithstanding the death of the witness and whatever respectability of the court taking the deposition, the solemnity of the occasion and the weight of the testimony, such depositions are ex parte, and therefore utterly incompetent. See State v. Cambell, 1 Rich. 124, 1844 W.L. 2558 (S.C. 1844) ID. at 125.

The principal evil at which the Sixth Amendment's Confrontation Clause was directed was the mode of criminal procedure, particularly the use of ex parte examinations, (the "thing" form or format not withstanding) as evidence against the accused. The Clause's primary object is testimonial hearsay, and interrogations by law enforcement officers fall squarely within that class.

This case reveals the Court's fundamental failure to interpret the Constitution in a way that secures its intended constraint on judicial discretion.

The Constitution provides a prescribed procedure for determining the reliability of testimony in criminal trials and courts lack the authorit

(9)

to replace it with one of their own devise. Out-of-court statements made by someone and not taken under oath, should not be considered substantive evidence upon which a conviction could be based.

Indeed, cross-examination is a tool used to flesh out the truth, not an empty procedure. See Kentucky v. Stincer, 482 U.S. 730, 737, 107 S.Ct. 2658, 96 L.Ed. 2d 631 (1987). ("The right of confrontation, cross-examination, protected by clause, thus is essentially a 'functional' right designed to promote reliability in the truth finding function of a criminal trial"). See also Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed. 2d 666 (1990).

In Pointer, the court held that this bedrock procedural guarantte applies to both federal and state prosecutions. See Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965).

In State v. Webb, 2 N.C. 103 (1794) that court held, "It is a rule of common law, found on natural justice that no man shall be prejudiced by evidence which he had not the liberty to cross-examine." Id. at 204.

In this case, Defendant-Appellant's substantial rights are prejudiced as trial court erroneously allows testimonial evidence, a reading of taken deposition and co-defendant's taped statement against Defendant-Appellant's confrontation rights over the objections of defense counsel. Here, the jury had before it improper, inadmissable evidence which demonstrated manifest miscarriage of justice and an abuse of the court's discretion. The

(10)

Court relies on the test made out under State v. Madrigal(2000), 87 Ohio St. 3d 378, 386, 721 N.E. 2d 52, 62, overruling the holding in State v. Gilliam(1994), 70 Ohio St. 3d 17, 635 N.E. 2d 1242, "to overcome a violation of the Confrontation Clause, the statement must bear adequate indicia of reliability or be supported by a particularized guarantee of trustworthiness." Also Lilly v. Virginia(1994), 527 U.S. 116, 119 S.Ct. 1887.

Notwithstanding, Sixth Amendment Confrontation Clause's ensurence is a procedural, rather than a substantive guarantee which commands, not that evidence be reliable, but that reliability be assessed in a particular manner; by testing in the crucible of cross-examination. The Clause reflects a judgment, not only about the desirability of reliable evidence, but about how reliability can be determined.

The unpardonable vice of Madrigal is its demonstrated capacity to admit core testimony that the Confrontation Clause plainly meant to exclude. Despite the plurality's speculation in Lilly, 527 U.S. at 137, 119 S.Ct. 1887, that it was "highly unlikely" that accomplice statements implicating the accused could survive Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed. 2d 597; courts continue routinely to admit them. And, it is time, in criminal prosecutions, that the whole cob-web of legal fiction and technical inferred against the accused should be stricken donw.

Statements in this cause are testimonial. Statements taken by police officers in the course of interrogations are testimonial

(11)

under even a narrow standard. Furthermore, trial court in its enthusiasm devised an unusual, unique, and wholly improper scheme establishing deposition for trial and embarked upon a very unusual application introducing admissability of co-defendant's taped statement. (T.pp. 296-305).

First, it erroneously rejects defense counsel's objection as to the "hearsay" that was done. Second, it instructs the jury, unconventionally, as to what is not being admitted as truth, as the deposition is then allowed to be read into record (before the jury) by someone other than the person whose statements they were. It is implausible that our system of justice which concedely condemned trial by unsworn ex parte affidavit would deem admissable this unsworn testimony perfectly acceptable here.

There is scant evidence that any exceptions were invoked to admit testimonial statements against the accused in a criminal case and doubtful that the original purpose of the examination by law enforcement was to produce evidence admissable at trial. Nevertheless, the technical manipulations asserted for the interest of prosecution, defendant's are guaranteed the fundamental fairness of trial. The central concern of the Confrontation Clause is to ensure the reliability of evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. See Maryland v. Craig, supra.

To be sure, it is established federal law: Out-of-court statements that are testimonial are barred under the Confrontation

(12)

Clause unless witnesses are unavailable and defendant had prior opportunity to cross-examine witnesses regardless of whether such statements are deemed reliable by court. Crim. Law 662.60 U.S.C.A. Const. Amend. 6.

The prosecution argues, insisting, that the Defendant voluntarily made statements incriminatory to himself to a police officer placing him at the crime scene. However, this argument is inconsistent with the Confrontation Clause, in that, the Clause bars admissability under law of evidence. Statements elicited during police interrogations that qualify as testimonial, thus, are not admissable under the Confrontation Clause. U.S.C.A. Const. Amend. 6. Furthermore, the officer only makes bare assertions as to the defendant's statements; "Hearsay;" inadmissable; not covered by any Rule of Evidence exception.

The trial court's error in this final matter is tantamount to judicial misconduct and it denied Defendant-Appellant of the fundamental and constitutionally guaranteed right to a fair trial. The trial court barred the jury from learning and hearing the state's chief witness, Salahuddin, under oath and on the record, recant, renege and retract his original and initial statement to law enforcement incriminating Defendant-Appellant. Salahuddin's recantation and reneging during his sworn testimony with the jury absent from the courtroom exculpates Defendant-Appellant.

(13)

CONCLUSION

The blatant and atrocious conduct committed on the behalf of the trial court, as well as the assustant prosecutor for the State in this matter, decries of a heralded miscarriage of the most extreme magnitude.

The trial methods and techniques orchestrated by the assistant prosecutor for the State in this cause also demonstrates a decietful and covert form of tactical prosecution misconducted against the integrity and honor of dignified judiacial proceedings on this case.

The persistent requests initiated by the Defendant-Appellant in this cause to confront his accusers exemplify both the former claims. Hearsay evidence of a non-testifying co-defendant should always, most absolutely, be considered inadequate and unreliable because of its intrinsic nature to "shift blame."

In the case at bar, taped statements of co-defendants were presented as evidence at Defendant-Appellant's suppression hearing. (See Motion To Suppress Transcript)

Subsequently, Defendant-Appellant made a request to the court to examine and inspect said taped statements during trial proceedings on May 18, 1999. (See Trial Transcript, (T.pp. 108, 109)

Defendant-Appellant further requested that the taped statements be admitted into trial proceedings, during sentencing, so that they would be made a part of the record. (See Sentencing Transcript, T.pp. 363, 364)

And finally, Defendant-Appellant filed a motion to the Hamilton County

(14)

Common Pleas Court requesting, once again, the taped statements of co-defendants. (See Motion For Co-Defendant's Taped Recorded Statement, December 21, 2004)

The failure of the trial court in not allowing these taped statements to be a part of the record not only infringed upon the Defendant-Appellant's due process rights, or denied him a fair and impartial trial by jury, but instigated the most gravest injustice of inequality that could ever be perpetrated against a Defendant in an American court of law.

For the reasons discussed above, this case involves matters of public and great general interest, a substantial constitutional question, and is a felony case as well. The Appellant request's that this Court grant jurisdiction and allow this cause so that the important issues presented in this case will be reviewed on their merits.

Respectfully Submitted,

*Richard Bohannon*

Mr. Richard Bohannon, #374-617
C.C.I.
P.O. Box 5500
Chillicothe, Ohio 45601

## PROOF OF SERVICE

I certify that a copy of this Memorandum In Support Of Jurisdiction was sent by ordinary U.S./institutional mail to counsel of record for the appellees, Thomas J. Boychan, Jr., Hamilton County Assistant Prosecutor, Hamilton County Prosecutor's Office, 230 E. Ninth Street, Suite 4000, Cincinnati, Ohio 45202 on this ____2.5____ day of ____April____, 2005.

Respectfully Submitted,

*Richard Bohannon*

Richard Bohannon, Counsel of Record
COUNSEL FOR APPELLANT, RICHARD BOHANNON; PRO SE

(15)

# AFFIDAVIT OF INDIGENCY

## IN THE SUPREME COURT OF OHIO

### Affidavit of Indigency

I, _Richard Bahannon_, do hereby state that I am without the necessary funds to pay the costs of this action for the following reason(s):

[Note: S.Ct. Prac. R. XV, Sec. 3, requires your affidavit of indigency to state the reason(s) you are unable to pay the docket fees and/or security deposit.]

1. At trial, I was indigent being served by court-appointed counsel.
2. On direct appeal, I was indigent being served by court-appointed counsel.
3. I am indigent at the present time, being without funds or assets with which to pre-pay filing fees, court costs or to give security thereof.
4. As an inmate at Chillicothe Correctional Institution, I recieve a total of $18.00 monthly derived as State Pay from the State of Ohio.
5. I need such gratuity pay for my personal maintenance and hygiene.
6. I have filed no lawsuits in the Courts of Ohio and/or the federal system.
7. I believe my constitutional rights have been denied me in this case, and entitles me to access to the courts at public expense.
8. All the foregoing averments are true as I verily believe.

Pursuant to Rule XV, Section 3, of the Rules of Practice of the Supreme Court of Ohio, I am requesting that the filing fee and security deposit, if applicable, be waived.

_Richard Bohannon_
Affiant

Sworn to, or affirmed, and subscribed in my presence this ___ day of
_April_, 2005.

_Debra Gensley_
Notary Public

My Commission Expires: _5/14/06_

[Note: This affidavit must be executed not more than one year prior to being filed in the Supreme Court in order to comply with S.Ct. Prac. R. XV, Sec. 3.]

**APPENDIX**

(i)

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO. C-040415
                                                   TRIAL NO. B-9808141-A
     Respondent-Appellee,         :

vs.                                     :          *JUDGMENT ENTRY.*

RICHARD BOHANNON,                       :

     Petitioner-Appellant.        :


This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).

Petitioner-appellant Richard Bohannon presents on appeal a single assignment of error, in which he contends that the common pleas court erred in dismissing his petition for postconviction relief without a hearing. We find no merit to this contention.

On May 21, 1999, the Hamilton County Common Pleas Court convicted Bohannon of receiving stolen property, misuse of a credit card, and two counts of burglary. This court affirmed the judgment of conviction, see *State v. Bohannon* (Mar. 1, 2000), 1st Dist. No. C-990386, and the Ohio Supreme Court denied Bohannon leave to file a delayed appeal.

Bohannon then filed in the United States District Court for the Southern District of Ohio a petition for a writ of habeas corpus. The district court stayed further proceedings on the petition until Bohannon had exhausted his state remedies on the petition's claim that the prosecution had failed to disclose in discovery exculpatory

**(1)**

Bohannon presented this claim to the common pleas court in his April 5, 2004, petition for postconviction relief. The common pleas court denied the petition, and this appeal ensued.

Bohannon failed to file his petition within the time prescribed by R.C. 2953.21(A)(2). R.C. 2953.23 closely circumscribes the jurisdiction of a common pleas court to entertain a tardy postconviction petition: The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his petition depends, or that his claim is predicated upon a new and retrospectively applicable federal or state right recognized by the United States Supreme Court since the prescribed time had expired; and he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * * ."

Bohannon did not base his postconviction claim upon a new constitutional right. And he failed to submit with his petition evidence demonstrating that he had been unavoidably prevented from discovering the facts upon which his claim depended. R.C. 2953.23(A) thus precluded the common pleas court from entertaining the petition. Therefore, we hold that the court properly denied the petition..

Accordingly, we overrule the sole assignment of error and affirm the judgment of the common pleas court.

Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.

GORMAN, P.J., PAINTER and SUNDERMANN, JJ.

*To the Clerk:*

Enter upon the Journal of the Court on March 23, 2005 per order of the Court _____ .
_____
Presiding Judge

2

(2)

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

STATE OF OHIO,                                    :           APPEAL NO. C-990386

                                                              TRIAL NO. B-9808141(A)

            Plaintiff-Appellee,        :

                                                              *JUDGMENT ENTRY.*

    vs.                                               :

RICHARD BOHANNON,                     :

        Defendant-Appellant.           :

This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).

Defendant-appellant, Richard Bohannon, was tried by a jury, found guilty, and convicted for burglary, misuse of a credit card, and receiving stolen property. Bohannon claims that his conviction violated his right to confront witnesses and was against the manifest weight and sufficiency of the evidence. Bohannon also claims that he was denied effective assistance of counsel. We disagree.

The Confrontation Clause ensures that no one will be convicted without being given the opportunity to confront and cross-examine witnesses at trial. *State v. Gilliam* (1994), 70 Ohio St.3d 17, 635 N.E.2d 1242, citing *Lee v. Illinois* (1986), 476 U.S. 530, 106 S.Ct. 2056. When the state seeks to introduce a nontestifying accomplice's statement, it no longer may be admitted as evidence of guilt of the defendant if it falls within a firmly rooted hearsay exception. See *State v. Madrigal* (2000), 87 Ohio St.3d 378, 386, 721 N.E.2d 52, 62, overruling the contrary holding in *State v.*

**(3)**

3/2/00

*Gilliam, supra.* To overcome a violation of the Confrontation Clause, the statement must bear adequate indicia of reliability or be supported by a particularized guarantee of trustworthiness. See *Madrigal* at 386, 721 N.E.2d at 62; see, also, *Lilly v. Virginia* (1999), 527 U.S. 116, 119 S.Ct. 1887. But even if such a statement is erroneously admitted, this court need not reverse the conviction if the admission of the statement is harmless. See *Lilly, supra; Madrigal, supra.*

In this case, we hold that Bohannon's Confrontation Clause rights were violated because, pursuant to *Lilly*, a nontestifying accomplice's statement that tends to shift blame to others is inherently unreliable and does not bear adequate indicia of reliability. See *Lilly, supra; Madrigal, supra.* Despite this, we hold – based upon the overwhelming evidence of guilt aside from the erroneously admitted statement, including Bohannon's incriminating statement made to the arresting officer – that the admission of the nontestifying accomplice's statement was harmless. See *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824; *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431; *Schneble v. Florida* (1972), 405 U.S. 427, 92 S.Ct. 1056; *Madrigal, supra.* Therefore, we overrule Bohannon's first assignment of error.

Bohannon claims, in his second assignment of error, that he was denied effective assistance of counsel. In order to demonstrate ineffective assistance of counsel, Bohannon must show that, but for counsel's unprofessional errors, the outcome of the trial would have been different. See *State v. Stojetz* (1999), 84 Ohio St.3d 452, 705 N.E.2d 329, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. Bohannon cites as ineffective assistance his counsel's failure to call a witness who may have been able to impeach the credibility of the erroneously admitted statement of the nontestifying accomplice. Bohannon and his counsel discussed this issue at length on the record. The court asked Bohannon whom he wanted to call as witnesses in addition to those listed on the defense witness list. Bohannon stated that there were two individuals who would testify that Bohannon's accomplices knew one another. The state stipulated to the testimony of Bohannon's proposed witnesses, and the case proceeded without further objection from Bohannon. We hold that Bohannon has failed to demonstrate that counsel's actions were ineffective. We, therefore, overrule Bohannon's second assignment of error.

In Bohannon's third assignment of error, he claims that his conviction was contrary to the manifest weight of the evidence and was based upon insufficient evidence. Sufficiency and weight of the evidence are separate concepts that may lead to different results. If a conviction is not based upon sufficient evidence, then the defendant must be set free because the state has not met its burden to produce evidence to satisfy each and every element of the charged offense. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. Conversely, if the conviction is contrary to the manifest weight of the evidence, then the defendant is entitled to a new trial because, although there is sufficient evidence to meet the elements of the charged offense, the burden of persuasion to support a conviction beyond a reasonable doubt has not been met. See *id.* If we determine that there is substantial evidence to support all of the elements of the charged offense and that the evidence is sufficiently probative of guilt, we will not reverse on either the sufficiency or the weight of the evidence. See *State v. Barnes* (1986), 25 Ohio St.3d 203, 495 N.E.2d 922; *Thompkins, supra.*

The record in this case demonstrates that Bohannon, by his own admission, was the driver of a vehicle that carried two other individuals, one of whom burglarized two locations. Evidence was presented that tied Bohannon's car to one of the burglaries via his license-plate number. Additionally, witnesses testified that they recognized Bohannon's coat, which had been worn by the accomplice who committed the burglary. Thus, based upon complicitor liability, Bohannon was guilty of burglary. As to the offense of misuse of a credit card, Bohannon's license-plate number was tied to

the purchase of gasoline and other merchandise. Finally, the police recovered stolen watches from Bohannon's car. Testimony was presented that the watches belonged to one of the victims. Thus, the charge of receiving stolen property was properly supported by the evidence. Based upon the overwhelming evidence of guilt – aside from the erroneously admitted statement of the nontestifying accomplice – we hold both that there was substantial evidence to satisfy the elements of the charged offenses, and that the evidence was sufficiently probative of guilt beyond a reasonable doubt. Therefore, we overrule Bohannon's third assignment of error.

Having overruled all of Bohannon's assignments of error, we affirm the judgment of the trial court.

Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.

**Hildebrandt, P.J., Sundermann** and **Winkler, JJ.**

*To the Clerk:*

Enter upon the Journal of the Court on _____ March 1, 2000 _____

per order of the Court _____.

Presiding Judge

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
### HAMILTON COUNTY, OHIO

STATE OF OHIO                           APPEAL NO. C-040415

    Appellee,

vs.                                     ENTRY OVERRULING MOTION
                                        FOR APPOINTMENT OF COUNSEL

RICHARD BOHANNON

    Appellant.


This cause came on to be considered upon the *pro se* motion of the appellant filed herein for appointment of counsel for oral argument.

The Court, upon consideration thereof, finds that the motion is not well taken and is overruled.


**To The Clerk:**

**Enter upon the Journal of the Court on** ___JAN 2 1 2005___ **per order of the Court.**

**By:** _____          (Copies sent to all counsel)
            **Presiding Judge**

(6)



**IN THE COURT OF APPEALS**

**FIRST APPELLATE DISTRICT OF OHIO**

**HAMILTON COUNTY, OHIO**

STATE OF OHIO

      APPEAL NO. C-990386

      TRIAL NO. B-9808141(A)

      Appellee,

vs.

      ENTRY OVERRULING MOTION
      FOR RECONSIDERATION

RICHARD BOHANNON

      Appellant.

      This cause came on to be considered upon the *pro se* motion of the appellant filed herein for reconsideration.

      The Court, upon consideration thereof, finds that the motion is not well taken and is hereby overruled.

**To The Clerk:**

**Enter upon the Journal of the Court on** _____NOV 2 4 2004_____ **per order of the Court.**

**By:** _____    **(Copies sent to all counsel)**
            **Presiding Judge**

```
ENTERED
NOV 2 4 2004
IMAGE  17
```

THE STATE OF OHIO, HAMILTON COUNTY

COURT OF COMMON PLEAS

CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | : | NO. B-9808141(A) |
| Plaintiff | : | (Judge Martin) |
| vs. | : | **FINDINGS OF FACT,** |
| | | **CONCLUSIONS OF LAW,** |
| RICHARD BOHANNON | : | **ENTRY DENYING PETITION TO** |
| | | **VACATE** |
| Defendant | : | |

This matter is before the Court on the petition to vacate filed by the defendant, the response filed by the State, and the entire record in this matter. The Court determines that all questions raised can be resolved from the existing record, therefore, no evidentiary hearing will be held.

The Court makes the following <u>Findings of Fact</u>:

1.    Defendant claims prosecutorial misconduct and newly discovered evidence.

2.    Defendant's claims are based on matters in the record.

Based upon the above Findings of Fact the Court makes the following <u>Conclusions of Law</u>:

1.    Defendant's claim could have been raised at trial, sentence, or on appeal, and are therefore barred be res judicata.[1]

2.    Defendant's claim is not supported by evidentiary documents as required by <u>State v. Pankey</u>[2].



---

[1]    <u>State v. Perry</u> (1967), 10 Ohio St.2d 175.

[2]    (1981), 68 Ohio St.2d 58, 428 N.E.2d 413

3.      Claims based on newly discovered evidence are not justifiable in a post conviction

action.[3]

Based upon the above Findings of Fact and Conclusions of Law, and pursuant to R.C.

2953.21(C), the Court hereby dismisses the petition to vacate.


_____

Steven E. Martin
Judge, Court of Common Pleas


Counsel:

Thomas J. Boychan, Jr. (0040183P)
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202

Richard Bohannon #374-617
Lebanon Correctional Institution
P.O. Box 56
Lebanon, Ohio 45036

---

[3]  State v. Clay (March 8, 1983), Hamilton App. No. C-820434, unreported.

Westlaw.

Not Reported in N.E.2d
1998 WL 272959 (Ohio App. 1 Dist.)
(Cite as: 1998 WL 272959 (Ohio App. 1 Dist.))

Page 1

c
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton
County.

State of OHIO, Plaintiff-Appellee,
v.
Charles KILLINGS, Defendant-Appellant.

Nos. C-970167, C-970247.

May 29, 1998.

Criminal Appeal From: Hamilton County Court of
Common Pleas Judgment Appealed From is:
Reversed and Cause Remanded.

Joseph T. Deters, Prosecuting Attorney, and
Ronald Springman, Assistant Prosecuting Attorney,
for Plaintiff-Appellee.

Hal Arenstein, for Defendant-Appellant.

M.B. BETTMAN, P.J., PAINTER and
SHANNON [FN*] JJ.

> FN* Judge Raymond E. Shannon, retired,
> of the First Appellate District, sitting by
> assignment.

*DECISION.*

PER CURIAM.

*1 We have, *sua sponte,* removed these appeals
from their placement upon the accelerated calendar.
[FN1]

> FN1. Appeal No. C-970167 is taken from

the judgment entered on the jury's verdict
of January 31, 1997, and is the primary
medium for the issues presented to us.
Appeal No. C-970247 pertains to the trial
court's March 19, 1997, denial of a motion
for a new trial. We have consolidated the
appeals for review.

Defendant-appellant Charles Killings advances
four assignments of error for our review with
respect to his conviction for rape.

An indictment was returned against appellant
charging him with one count of kidnapping and one
count of rape in connection with the sexual assaults
committed in June 1996 against a thirteen-year-old girl by appellant and two of his
friends, Sheldon Hibbard and Mario Ferguson. A
jury trial ensued, wherein the trial court, at the
state's request and upon the close of all the
evidence, included a general instruction to the jury
on complicity. Defense counsel had objected to the
inclusion of the complicity instruction on the basis
that appellant was not charged with complicity and
that its insertion at the trial's conclusion constituted
the addition of a new charge against which
appellant was unable to defend. Appellant was
found guilty of rape, but acquitted of the kidnapping
charge, and a sentence of ten to twenty-five years'
imprisonment was imposed.

Appellant's first assignment of error contends that
the trial court erred by instructing the jury on the
issue of complicity. We agree.

The facts contained in the record reveal that on the
afternoon of June 14, 1996, thirteen-year-old
Kristin Monsi and a friend were walking along Linn
Street in Cincinnati. At some point the girls were
approached by two males who were later identified
as Sheldon Hibbard and Mario Ferguson. The girls
declined the boys' offer to "party" and continued
walking, eventually crossing the street, at which
point they encountered the appellant. The
prosecution and defense presented conflicting
accounts of the facts after this point. According to a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1998 WL 272959 (Ohio App. 1 Dist.)
(Cite as: 1998 WL 272959 (Ohio App. 1 Dist.))

defense witness, appellant was observed in an alley "hugging and kissing" a female teenager for over an hour. A police officer testified that appellant had stated that this "foreplay" culminated in consensual sex with Monsi. Monsi, on the other hand, essentially claimed that appellant chased her, placed her in an automobile that was occupied by Hibbard and Ferguson and forced her to engage in vaginal intercourse with appellant and Hibbard. One witness for the state testified that he heard screams while another witness stated that he saw one of the males standing "buck naked" in the alley where Monsi claimed to have been assaulted. In explaining the ordeal to the police, appellant stated that after he had intercourse with Monsi, Hibbard entered the automobile and had sex with her. Appellant further indicated that Mario Ferguson was to be "next" to have sex with Monsi, but that the police arrived before Ferguson "could make himself erect."

Appellant was charged in a two-count indictment with kidnapping [FN2] and rape. Appellant maintains that the indictment charged him with a single count of rape, and that therefore the inclusion of the complicity instruction to the jury was erroneous as a matter of law because it improperly held him accountable for the separate rape committed by his cohort, Sheldon Hibbard.

> FN2. The kidnapping charge is not at issue in this appeal, as appellant was found not guilty of that offense. Therefore, further references to "counts" in the indictment will be to the rape count unless otherwise specifically noted.

*2 In criminal prosecutions, the accused "shall not be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * * [and likewise] shall enjoy the right to be informed of the nature and cause of the accusation." Fifth and Sixth Amendments to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. "The purpose of these constitutional guarantees is quite clear: fundamental decency and civilized conduct require that an accused be permitted to defend himself fairly against crimes charged to him, and to do so, it is necessary that he be fully and fairly informed of the nature and cause of the accusations

against him. The fundament of such information is provided by the indictment." State v. Crooks (Dec. 12, 1984), Hamilton App. No. C-840184, unreported.

Pursuant to R.C. 2923.03(F), a charge of complicity may be stated in terms of R.C. 2923.03 or in terms of the principal offense. State v. Caldwell (1984), 19 Ohio App.3d 104, 483 N.E.2d 187. Where one is charged in terms of the principal offense, he is on notice, by operation of R.C. 2923.03(F), that evidence could be presented that the defendant was either a principal or an aider and abettor for that offense. See State v. Dotson (1987), 35 Ohio App.3d 135, 520 N.E.2d 240. Complicity simply defines circumstances which may connect one person with another in the commission or attempted commission of a crime. See State v. Gaines (Dec. 10, 1981), Cuyahoga App. No. 43257, unreported. Charging an individual with complicity allows one who aids and abets the commission of a crime to be charged as a principal when that person acts "with the kind of culpability required for the commission of an offense * * *." R.C. 2923.03(A)(2); State v. Gaines, supra.

At trial, the state presented evidence to support its position that appellant had indeed taken Monsi against her will and raped her. Appellant, in turn, presented evidence to establish his position that Monsi engaged in consensual sex with him. The focus and, naturally, the point of the trial was to establish either guilt or innocence with respect to appellant's alleged act of rape. Details involving the actions of Sheldon Hibbard were presented as incidental to those of appellant and surfaced not to prove appellant's guilt in Hibbard's separate sexual assault against Monsi, but rather to provide the entire factual backdrop surrounding the incident.

The case before us is similar to the facts presented in State v. Crooks (Dec. 12, 1984), Hamilton App. No. C-840184, unreported. In Crooks, a two-count indictment was returned against the defendant, charging him with rape by vaginal intercourse and rape by fellatio. The charges arose out of separate incidents of alleged forcible vaginal rape and oral intercourse that were accompanied by similar acts committed by an unknown companion who evaded apprehension. The evidence adduced at trial suggested that the defendant was unable to attain an

Not Reported in N.E.2d
1998 WL 272959 (Ohio App. 1 Dist.)
(Cite as: 1998 WL 272959 (Ohio App. 1 Dist.))

erection and that, consequently, he aborted his attempt at vaginal rape. Testimony did establish, however, that the companion engaged in vaginal intercourse with the victim. When the defense moved for an acquittal at the close of the state's case, the trial court overruled the motion, finding sufficient evidence to charge the defendant as a principal on the fellatio rape count and sufficient evidence of force and penetration to charge him as a complicitor in the vaginal rape of the victim by the unidentified companion. The court included a general jury instruction on complicity, and the jury subsequently returned guilty verdicts against the defendant on both counts.

*3 On appeal, we determined that constitutional due process rights had been violated because the defendant had no notice either by way of his indictment or through a bill of particulars that he could have been held accountable for the acts of his companion as an aider and abettor. We concluded that the application of R.C. 2923.03(F) and Crim.R. 7(D) to allow for an instruction on complicity where the original indictment failed to inform the defendant that he could be held responsible as an aider and abettor resulted in a prejudicial and unconstitutional amendment of the indictment. Specifically, we held:

We take it to be unarguable that R.C. 2923.03(F) and Crim.R.7(D) are sustainable as against [challenges based upon] the fifth and sixth amendments of the federal Constitution, and article 1, section 10 of the Ohio Constitution only to the extent that they do not materially or seriously infringe the right of a defendant to be informed of the nature and cause of the accusation.

* * *

As it was, the defendant had no idea nor reason to suspect that he was placed in jeopardy by the two count indictment of conviction as a complicitor in the acts of his companion until the trial court's ruling on his Crim.R. 29 motion at the conclusion of the state's case. Under such circumstances, we simply cannot assume that the defendant was adequately informed of the nature and cause of the accusation in a fashion permitting him his undoubted right to present a reasonable and adequate defense to the latter charges.

See, also, *State v. Staten* (Nov. 7, 1989), Franklin

App. No. 88AP-841, unreported (wherein the Tenth Appellate District determined that an instruction on complicity was erroneously provided to the jury on the basis that a companion's crime was not identified in the original indictment or properly added as an amendment to the indictment so as to provide the defendant with adequate notice and an opportunity to defend).

As we have noted, the indictment in the instant case charged appellant as the principal offender in a single count of rape. After the trial court agreed to include the charge on complicity at the close of all the evidence, appellant, charged in the indictment with only one crime, found himself placed in jeopardy of two distinct crimes: one as principal to his own alleged rape of Monsi and one as an aider and abettor to Sheldon Hibbard's separate and distinct crime against Monsi. Under the court's instruction, then, the jury could have found appellant guilty of the rape as a principal or guilty of a separate rape as an aider and abettor, although he was afforded an opportunity to defend only against the count charging him as the principal in his own act of rape.

It is impossible to determine with certainty on what act the guilty verdict was based. As appellant argues in his brief, under the facts of this case, it is quite clear that the state could have indicted appellant on two counts, one as a principal and one as an aider and abettor. While the latter may have been phrased, pursuant to R.C. 2923.03(F), in terms of either principal or complicitor status, the separation into two counts would have at least provided appellant with sufficient insight into his potential liability and made clear any questions concerning the factual basis for the additional count of rape. See *Crooks, supra.*

*4 Accordingly, we are convinced that appellant's due process rights were violated by the court's inclusion of the instruction on complicity. Consequently, we are compelled to sustain appellant's first assignment of error and to reverse his conviction and remand the case for a new trial.

Based upon our disposition of the first assignment of error, it is unnecessary for us to address the merits of the remaining three assignments of error. See App.R. 12(A)(1)(c).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1998 WL 272959 (Ohio App. 1 Dist.)
**(Cite as: 1998 WL 272959 (Ohio App. 1 Dist.))**

Page 4

Therefore, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with law.

*Judgment reversed and cause remanded.*

1998 WL 272959 (Ohio App. 1 Dist.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in N.E.2d
1984 WL 7110 (Ohio App. 1 Dist.)
(Cite as: 1984 WL 7110 (Ohio App. 1 Dist.))

Page 1

C

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton
County.

STATE OF OHIO, Plaintiff-Appellee,
v.
LENARDO CROOKS, Defendant-Appellant.

APPEAL NO. C-840184, TRIAL NO. B-832524.

December 12, 1984.

Court of Common Pleas.

Reversed and Remanded.

Messrs. Arthur M. Ney, Jr., and Christian J.
Schaefer, 420 Hamilton County Courthouse, Court
and Main Streets, Cincinnati, Ohio 45202, for
Plaintiff-Appellee.

Mr. Robert W. Blackmore, Suite 131, 1077
Celestial Street, Cincinnati, Ohio 45202, and Mr.
Timothy Smith, 405 Schwartz Building, 906 Main
Street, Cincinnati, Ohio 45202, for
Defendant-Appellant.

OPINION.

PALMER, J.

*1 On July 5, 1983, the Hamilton County Grand
Jury returned a two-count indictment against the
defendant-appellant, Lenardo Crooks, charging him
with rape by vaginal intercourse and rape by fellatio
in violation of R.C. 2907.02. T.d. 2. The charges
against the defendant arose out of separate incidents
of alleged forcible vaginal and oral intercourse with

the victim by the defendant, which were
accompanied by similar acts committed by an
unknown companion who was never apprehended.
Trial of the defendant to a jury commenced on
February 28, 1984. At the close of the state's
evidence, defense counsel moved pursuant to Crim.
R. 29 to dismiss both counts against the defendant,
challenging the sufficiency of the evidence as to
penetration and force on the vaginal rape count and
on the element of force on the fellatio rape count.
T.p. 225-27. The trial court overruled the motion,
finding sufficient evidence of force to charge the
defendant as a principal on the fellatio rape count
and sufficient evidence of force and penetration to
charge the defendant as a complicitor in the vaginal
rape of the victim by the defendant's companion.
T.p. 228-30. At the close of all evidence and over
the objection of defense counsel, T.p. 313-14, the
court instructed the jury on aiding and abetting, T.p.
378-80, and then submitted the charges to the jury
on four verdict forms: one of guilty of vaginal rape,
one of guilty of fellatio rape, and two of not guilty
of the respective charges. T.p. 380. The jury
subsequently returned verdicts of guilty on both
counts, T.d. 39-40, and judgment was entered
accordingly. T.d. 41. From this judgment, the
defendant has taken this timely appeal in which he
asserts four assignments of error.

The principal question raised by this appeal is
presented by the defendant's second and third
assignments of error. The first, complaining of the
maximum and consecutive sentences imposed on
the defendant, is without merit and is overruled on
authority of *State v. Brown* (1984), 12 Ohio St. 3d
147, 465 N.E.2d 889. The fourth assignment of
error, to the extent that it raises issues separate and
distinct from those hereinafter discussed - *viz.,* in its
assertion that the judgment was contrary to law in
the absence of evidence of force or threat of force -
is similarly without merit and is overruled. Viewing
the question in isolation from the other issues
present in the case, hereinafter discussed, we
conclude that the evidence presented was clearly
sufficient to permit the jury to determine beyond a
reasonable doubt the defendant's guilt, as a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1984 WL 7110 (Ohio App. 1 Dist.)
(Cite as: 1984 WL 7110 (Ohio App. 1 Dist.))

principal, of the count of oral rape. To the extent that other issues are raised in the fourth assignment of error, directly or by necessary inference, they are subsumed in our discussion and disposition of the second and third assignments of error *infra*.

In the two remaining assignments of error, asserting that the judgments of guilty of the two counts of rape were contrary to law, the defendant argues that he could not be indicted as a principal on the two counts of rape and then, at the conclusion of the state's case, when it was apparent that the state had failed to adduce any evidence with respect to a material element of the count of vaginal rape, proceed to a judgment of guilty as a complicitor in aiding and abetting another in an entirely separate rape incident. To do so, argues the defendant, amounts to an impermissible constructive amendment of the indictment charging an entirely separate crime or crimes from those originally charged, resulting in a violation of the fifth and sixth amendments to the United States Constitution as well as article I, section 10 of the Ohio Constitution. We agree.

*2 The relevant factual background against which this issue arises, may be summarized as follows. The victim testified that her car ran out of gasoline as she was returning home after participating in a choral event. After a considerable wait for assistance which did not materialize, the victim began to flash her lights on and off in an effort to attract attention to her plight. At about 3:30 a.m., a car stopped at her position. The occupants, the defendant operator and another unidentified male, offered to drive the victim to a station where gas might be obtained. She accepted, leaving a note on her car and got into the defendant's car as a passenger. The defendant then began a wandering course, ostensibly in search of an open service station, briefly stopping once at his uncle's home in Lincoln Heights, and another time at a service station where the victim called her husband while a gas can was being filled.

Resuming their journey, the defendant then began driving on side streets, and the victim began to suspect the motivation of her two companions. As the car passed into a dark dead end street, the victim grew hysterical. The defendant and his companion tried to calm the victim, stating that they did not want to hurt her, but wanted her to do something for them. That something consisted, initially, of an act of fellatio upon the defendant, followed by, successively, vaginal intercourse and fellatio with the back seat passenger. The defendant then attempted vaginal intercourse with the victim, but was apparently incapable of penetration. T.p. 55. Ultimately, the victim was released at another service station. The defendant testified that the victim initiated the sexual conduct, and voluntarily engaged in the acts complained of.

It is clear from the wording of the indictment, and from the state's opening statement, that the defendant was to be tried as a principal in two rape offenses directly involving his own conduct with the victim. T.p. 25. It was not until after the victim conceded on direct examination that she could not state that the defendant had succeeded in penetrating her vagina, T.p. 55- 56, that the theory of guilt as a complicitor became a matter of emphasis. Thus, when defendant moved for an acquittal under Crim. R. 29 at the close of the state's case, arguing the deficiency in the vaginal rape charge, the trial court responded as follows:

THE COURT: Well, I'll tell you I don't think the prosecutor has to argue at this point, of course, the motion has to be - the facts have to be construed most favorably in favor of the prosecution. . . .

Now, as regards to the first count, the one thing apart from anything else that you haven't mentioned is that there's been undisputed testimony that the other person with the Defendant did have sexual intercourse with the alleged victim with penetration and so forth; and if there was force here, if there was a rape, then I think its pretty clear that they were in it together - that is, they were aiders and abettors. They were certainly - Crooks aided and abetted the other man if there was, in fact, a forcible sexual act because he drove the alleged victim to a secluded place, therefore making escape difficult. He participated in aggressively pursuing the sex under circumstances where a threat could be implied; and, therefore, if the other person had sexual intercourse, Crooks was responsible for that as an aider and abettor. It's clear to me if there was forced sex, Crooks is every bit as guilty as the other person.

*3 T.p. 227-228. The motion was overruled and

Not Reported in N.E.2d
1984 WL 7110 (Ohio App. 1 Dist.)
(Cite as: 1984 WL 7110 (Ohio App. 1 Dist.))

Page 3

the evidence proceeded to its conclusion. The court's proposed charge, which included instructions allowing the jury to return verdicts of guilty of the crimes as a principal and/or as an aider and abettor, was delivered to counsel in advance of closing arguments, and the defendant timely objected to the aiding and abetting instructions. T.p. 313. These were overruled, on the same theory as earlier articulated. T.p. 313-114. A renewed motion to dismiss the count of vaginal rape was similarly overruled. T.p. 314-15.

In closing argument, the state, adopting the court's theory, argued that even though the defendant's own attempt at vaginal rape may have aborted, "[t]he other guy did have vaginal intercourse with her. She wasn't sure about the Defendant." T.p. 322. The prosecutor concluded his argument on this point in the following words:

Now, Teresa wasn't sure whether the Defendant actually got inside of her because she had to help him out, couldn't get an erection. Testimony is sperm was found inside of her, and testimony is that the Defendant's companion had vaginal intercourse with Teresa Diehl. You'll be instructed under the aiding and abetting statute, State of Ohio, that if a person aids and abets another individual, he's just as guilty; so it makes no difference whether Reginald (sic) had vaginal intercourse with this woman or whether his companion had vaginal intercourse.

The Defendant is here, and his companion did have vaginal intercourse with this woman. The Defendant was an aider and abettor. He drove the car, took this lady to a secluded spot. He was involved with this companion, and it makes no difference which one had the vaginal intercourse.

They aided and abetted one another in the commission of this offense.

T.p. 329. Objections to this line of argument were overruled, T.p. 353-354, consistent with the trial court's theory previously set forth. The instructions to the jury contained a standard definition of "aid and abet," T.p. 378-379, and instructed the jury that:

One is not liable for the criminal acts of another unless he counsels, commands, aids and abets or procures the commission of the criminal act.

One who does aid and abets (sic) another in the commission of an offense is guilty of that offense.

T.p. 380.

Other instructions were, in general, similarly limited to a recital of elements and definitions without attempting to relate them to the evidence in the case, or to separate out the instructions relating to the defendant acting as a principal from the defendant acting as a complicitor. Four forms of verdicts were then given to the jury: as to count one charging vaginal intercourse, forms of guilty and not guilty; as to count two charging fellatio, forms of guilty and not guilty. Nothing in the jury instructions or in the verdict forms limited the jury, in returning guilty verdicts, to selecting between guilt as a principal or guilt as an aider and abettor of his companion's crimes. Thus, nothing appears of record precluding the jury from having found the defendant guilty of count one, vaginal rape, as a principal, or precluding them from having found him guilty of one or both counts as a complicitor. And nothing in the return of the two verdicts of guilty by the jury may be said to indicate which of the several alternatives made available to them by the court was in fact chosen by them as the basis of their verdicts. We find this to have been error requiring our reversal of the judgment below.

*4 It is black letter law, ingrained in our system of criminal jurisprudence from our earliest days as a republic, and dignified by inclusion in the Bill of Rights, that:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; . . . .

U.S. Const. amend. V. In a similar vein, amendment VI of the United States Constitution requires that:

In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; . . . .

Language virtually identical to these commandments may be found in article I, section 10 of the Ohio Constitution. The purpose of these constitutional guarantees is quite clear: fundamental decency and civilized conduct require that an accused be permitted to defend himself fairly against crimes charged to him, and to do so it is necessary that he be fully and fairly informed of the nature and cause of the accusations against him. The fundament of such information is provided by

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1984 WL 7110 (Ohio App. 1 Dist.)
(Cite as: 1984 WL 7110 (Ohio App. 1 Dist.))

the indictment. *See, e.g., Stirone v. United States* (1960), 361 U.S. 212, 80 S. Ct. 270; *Bartell v. United States* (1913), 227 U.S. 427, 33 S. Ct. 383; *United States v. Hess* (1888), 124 U.S. 483, 8 S. Ct. 571. Ohio decisions have consistently affirmed the principle under a variety of circumstances. *See, e.g., State v. Wozniak* (1961), 172 Ohio St. 517, 178 N.E.2d 800; *State v. Harris* (1932), 125 Ohio St. 257, 181 N.E. 104; *State v. Schaeffer* (1917), 96 Ohio St. 215, 117 N.E. 220; *Lane v. State* (1883), 39 Ohio St. 312; *Dillingham v. State* (1855), 5 Ohio St. 280; *State v. Washington* (1978), 56 Ohio App. 2d 129, 381 N.E.2d 1142; *City of Toledo v. Soldier* (1956), 101 Ohio App. 273, 139 N.E.2d 631. To state the matter bluntly, a defendant cannot be convicted of a crime of which he was never charged.

To this rule, upon which the defendant relies in the essentials of his appeal, there are several well recognized qualifications, within two of which the state finds support. One qualification, not factually relevant here, finds expression in Crim. R. 31(C), which allows a defendant charged with commission of a crime to nevertheless be found guilty of an attempt to commit the crime, or to be found guilty of a lesser included offense within the charged crime. In neither case covered by Crim. R. 31(C) is the word or spirit of the constitutional prohibitions violated since the defendant is considered adequately apprised of his potential lesser liability when he is charged with the greater offense.

Two additional qualifications of the general rule require specific articulation, since it is upon these that the state relies to sustain the instant judgment. The first of these is provided by Crim. R. 7(D), which recites in relevant part:

The court may at any time before, during, or after a trial amend the indictment, information, complaint or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information or complaint, or to cure a variance between the indictment, information or complaint and the proof, the accused is entitled to a discharge of the jury on his motion, if a jury has

been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made.... (emphasis added)

**\*5** The second such qualification to which the state refers us is R.C. 2923.03, upon the terms of which the trial court obviously relied. This statute, in relevant part, states:

(F) Whoever violates this section [*i.e.*, complicity, aiding and abetting, etc.] is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

Thus, argues the state, the fact that the defendant was charged as a principal does not, under R.C. 2923.03, preclude his being found guilty as an aider and abettor. Further, it is argued that if the state indeed changed its theory of the case after the victim's failure to lay the necessary groundwork for conviction of vaginal rape as a principal to prosecution as an aider and abettor, it was permissible under Crim. R. 7(D) to have done so since it represented no change in either the name or identity of the crimes charged. In our judgment the state's analysis fails.

We take it to be unarguable that R.C. 2923.03(F) and Crim. R. 7(D) are sustainable as against the fifth and sixth amendments of the federal constitution, and article I, section 10 of the Ohio Constitution only to the extent that they do not materially or seriously infringe the right of a defendant to be informed of the nature and cause of the accusation. In all of the cases to which we have been referred by the parties which rely on one or both of these provisions, the constitutional mandates have been preserved because the conduct constituting the crime charged was essentially single and indivisible. [FN1] Under such circumstances, it matters little to a defendant in terms of preparing his defense whether the focus of the trial is upon his conduct as a principal or as a complicitor; nor do amendments to the indictment prejudice him so long as the "name or identity" of the crime remains the same. The classic illustration involves a homicide, where the defendant is indicted as a principal but the evidence establishes that an accomplice

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

performed the actual killing and the defendant only aided and abetted the act in some fashion. *See, e.g., State v. Oden* (Apr. 6, 1983), Hamilton App. No. C-820331, unreported, *State v. DeBaker* (Jan. 6, 1982), Hamilton App. No. C-800746, unreported. Examples of the use of Crim. R. 7(D) where the indictment was amended to conform to the evidence without changing the name or identity of the crime charged include *Dye v. Sacks* (1962), 173 Ohio St. 422, 183 N.E.2d 380; *State v. Owens* (1975), 51 Ohio App. 2d 132, 366 N.E.2d 1367; *State v. Phipps* (1964), 3 Ohio App. 2d 226, 210 N.E.2d 138. In none of these cases did the conduct of the criminal embrace participation, in part as principal and in part as complicitor, in multiple acts constituting separate and divisible crimes. None of them present the instant facts, where, as the case unfolded, the defendant, charged with two crimes, found himself placed in jeopardy of four distinct crimes, two as principal and two as an aider and abettor of the separate crimes of another. Under the court's instructions and verdict forms, the jury could have found the defendant guilty of the two acts of rape as a principal, [FN2] or guilty of two acts of rape as an aider and abettor of his companion's crimes, or any combination of guilt or non-guilt as to any two of the four. As noted above, it is impossible to tell from the jury's verdicts on what acts the guilty verdicts were based, a consideration which, *inter alia,* militates against any validation of a guilty verdict in the state's otherwise unexceptionable case against the defendant as a principal in the oral rape count. Since defendant is clearly entitled to the resolution of all reasonable doubt in his favor, that principle requires us to consider the possibility that the jury found the defendant guilty as a principal in the vaginal rape count, a determination which would clearly require reversal in view of the failure of proof thereof, or, alternately, as an aider and abettor in both the vaginal and oral rape counts, a determination which we here conclude violated the defendant's fifth and sixth amendment and Ohio constitutional rights to an indictment charging him with the crime for which he is to be tried, and otherwise informing him of the nature and cause of the accusation against him.

FN1. Obviously a single course of action can involve multiple crimes, as where the defendant commits, sequentially, two distinct acts of rape against a single victim, *State v. Barnes* (1981), 68 Ohio St. 2d 13, 427 N.E.2d 517, or where theft is committed in the course of a burglary. *State v. Parson* (1983), 6 Ohio St. 3d 442, 453 N.E.2d 689.

The act or object of each of these may, however, be thought of as singular in nature. No other individual criminal actor is involved for whose crimes the defendant is held to answer, and no significant spatial or temporal interval separates the crimes themselves.

FN2. The record confirms that the trial court never withdrew from the jury the charge of vaginal rape by the defendant as a principal, notwithstanding the failure of necessary proof thereof.

*6 Under the facts of this case, it is quite clear that the state could have indicted the defendant on four counts, two as principal and two as an aider and abettor in the acts of his companion. While the latter might have been phrased, pursuant to R.C. 2923.03(F), in terms either of principal or complicitor, the separation into four counts would at least have provided the defendant with sufficient insight into his potential liability to have triggered a request for a bill of particulars under Crim. R. 7(E), or other discovery, which would have made clear any question concerning the factual basis for the additional two counts. The constitutional mandates would thus have been satisfied. As it was, the defendant had no idea nor reason to suspect that he was placed in jeopardy by the two count indictment of conviction as a complicitor in the acts of his companion until the trial court's ruling on his Crim. R. 29 motion at the conclusion of the state's case. Under such circumstances, we simply cannot assume that the defendant was adequately informed of the nature and cause of the accusation in a fashion permitting him his undoubted right to present a reasonable and adequate defense to the latter charges.

We note, parenthetically, that the deficiency we find in the procedure adopted in this case is perhaps particularly unfortunate because the record makes it quite manifest that, once the jury resolved the contested issue of force against the defendant the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1984 WL 7110 (Ohio App. 1 Dist.)
(Cite as: 1984 WL 7110 (Ohio App. 1 Dist.))

Page 6

balance of the evidence was more than sufficient to have bottomed a conviction of the defendant, as a principal, on the count of fellatio. The problem, as we have previously noted, is that under the court's instructions and verdict forms, we have no way of knowing that the jury's verdict of guilty of that count was in the defendant's capacity as principal or as an aider and abettor of his companion's oral rape. It is not inconceivable, under the evidence, that the jury may have determined the element of force against the state on the defendant's acts as a principal, but for the state on the issue of force as to his companion's acts. Under the court's instructions, this would have warranted the jury in returning the guilty verdict as an aider and abettor on the second count of oral rape, thereby injecting into the case the constitutional issue heretofore discussed.

Moreover, we may be permitted to note that had the state indicted on four counts, thus informing the defendant of his possible position of prejudice as a complicitor and removing the constitutional issue from the case, the evidence actually forthcoming in the case would doubtless have warranted submission to the jury on such additional counts and, if the issue of force was resolved against the defendant, arguably to have sustained a verdict of guilty on the additional counts of aiding and abetting in the companion's crimes.

We conclude that the second and third assignments of error are well taken and are granted. The judgment appealed from is accordingly reversed, and the case is remanded for further proceedings according to law.

SHANNON and KLUSMEIER, JJ., CONCUR.

*7 PLEASE NOTE:

The Court has placed of record its own entry in this case on the date of the release of this Opinion.

1984 WL 7110 (Ohio App. 1 Dist.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# The Supreme Court of Ohio

ON COMP... R-VI...

FILED

AUG 1 0 2005

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

## 102-144

State of Ohio

      v.

Richard Bohannon

Case No. 05-765

E N T R Y

    Upon consideration of the jurisdictional memoranda filed in this case, the Court declines jurisdiction to hear the case and dismisses the appeal as not involving any substantial constitutional question.

(Hamilton County Court of Appeals; No. C040415)

THOMAS J. MOYER
Chief Justice